UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------x

DRUG MART PHARMACY CORP., et al.,

Plaintiffs,

-against-

AMERICAN HOME PRODUCTS CORP., et al.,

Defendants.

MEMORANDUM AND ORDER
93 - CV - 5148

------------------------------------------------x

GLASSER, United States Senior District Judge:

The Designated Defendants Ciba-Geigy Corporation and G.D. Searle & Co. in this antitrust action have moved for summary judgment as to the Designated Plaintiffs' claims for declaratory and injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26. The Designated Defendants argue that the prior order of this Court, issued on January 25, 2007, see Drug Mart Pharm. Corp. v. American Home Prods. Corp., 472 F. Supp. 2d 385 (E.D.N.Y. 2007) ("January 25 Order"), which granted summary judgment in favor of the defendants as to the Designated Plaintiffs' claims for treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, and which held that the Designated Plaintiffs had failed to establish a genuine issue of material fact as to the existence of an actual antitrust injury, compels the conclusion that the Designated Plaintiffs' claims for equitable relief under Section 16 must likewise fail. For the reasons stated below, the Designated Defendants' motion for summary judgment as to the Section 16 claim is granted.

Also pending is the Designated Plaintiffs' motion to alter or amend the January 25 Order, which incorrectly stated that the Designated Plaintiffs are not seeking equitable or injunctive relief. For the reasons stated below, that motion is granted.

1

## BACKGROUND

## 1.    Procedural History

The complicated facts of this case have been set forth in numerous prior opinions
of this and other courts, familiarity with which is assumed.  <u>See</u> January 25 Order, 472
F. Supp. 2d at 390 (citing cases).  The facts relevant to this motion are relatively simple.
The Designated Plaintiffs are a group of seventeen retail pharmacies from fourteen
states, who allege, <u>inter alia</u>, that the Designated Defendants, manufacturers of brand-
name prescription drugs ("BNPDs"), have violated Section 2(a) of the Robinson-Patman
Act, 15 U.S.C. § 13(a), by engaging in illegal price discrimination in the form of
discounts, rebates, and other "charge-back" benefits offered to certain favored
purchasers, such as health maintenance organizations and mail-order pharmacies, but
not to the Designated Plaintiffs.  In 2005, the Designated Defendants filed a motion
seeking summary judgment on the ground that the Designated Plaintiffs had failed to
set forth a cognizable theory of damages under the Robinson-Patman Act and were
therefore unable to establish the element of antitrust injury, as is required to obtain
damages under Section 4 of the Clayton Act.[1]  In opposition to the Designated
Defendants' motion, the Designated Plaintiffs relied on their 1995 Expert Report, which
identified four "components" of the Designated Plaintiffs' actual damages:

> 1) Lost profits on actual sales where the profits were lost as a result of the
> price discrimination; 2) Lost profits on lost sales of BNPDs where the sales
> and profits were lost as a result of the price discrimination; 3) Lost profits on
> lost sales of products other than BNPDs ("lost ancillary profits") where the
> sales and profits were lost as a result of the price discrimination; and 4)
> special damages resulting from the price discrimination.

January 25 Order, 472 F. Supp. 2d at 421 (quoting Declaration of Robert Grass ("Grass
Decl."), dated January 21, 2005 (docket no. 464), Ex. 3 at 144).  The Designated

---

[1]    The Designated Defendants filed three other motions for summary judgment on different
grounds, all of which were addressed in the January 25 Order.  Because the defendants' damages motion is
the only one relevant to the present motion, the Court shall limit its discussion of the January 25 Order to
that motion.

Plaintiffs also argued that certain statements contained in depositions and affidavits submitted in opposition to the Designated Defendants' motion offered further evidence of their damages, but the Court declined to consider that extraneous evidence, finding that because the plaintiffs stated "in responses to interrogatories served in 1995. . . that the amount of sales and profits that they allegedly lost because of defendants' price discrimination would be the 'subject of an expert report,'" they were limited to the theories of damages contained in that report in opposing the defendants' motion. January 25 Order, 472 F. Supp. at 430 (quoting Grass Decl. Ex. 2). The Court granted summary judgment to the defendants, holding with respect to each of the Designated Plaintiffs' theories of injury that the Designated Plaintiffs failed to allege an antitrust injury cognizable under Section 4 of the Clayton Act or failed to offer sufficient empirical evidence in support of a cognizable theory to create an issue of fact as to the Designated Plaintiffs' actual injury.

2.      **The Pending Motion**

In the Rule 56 motions decided in the January 25 Order, the Designated Defendants did not move for summary judgment as to the Designated Plaintiffs' claims for equitable relief pursuant to Section 16 of the Clayton Act; indeed, the January 25 Order expressed the Court's erroneous belief that the Designated Plaintiffs sought only monetary damages in this case. 472 F. Supp. 2d at 422 n. 42. Shortly after the January 25 Order was issued, the Designated Plaintiffs moved pursuant to Federal Rule of Civil Procedure 59(e) and several other rules of procedure to alter or amend that erroneous statement, noting that "[t]he Complaints filed by the 17 Representative Plaintiffs seek not only monetary damages, but also declaratory and injunctive relief." Representative Plaintiffs' Memorandum of Law in Support of Their Motion Pursuant to Fed. R. Civ. P. 59(e), Fed. R. Civ. P. 60(a), Fed. R. Civ. P. 60(b) and Local Civil Rule 6.3 to Correct a Mistake or Error in, or in the Alternative, to Alter or Amend, a Judgment or Order

(docket no. 526), at 1-2.[2]  Additionally, in a letter to this Court dated March 1, 2007 (docket no. 532), and a letter to Magistrate Judge Gold dated March 13, 2007 (docket no. 533), the Designated Plaintiffs sought leave to conduct "focused discovery" regarding the state of the BNPD market from 1995 through 2007 for the purpose of developing their case for injunctive relief prior to trial.  The defendants responded to these letters in a letter to the Court dated March 16, 2007 (docket no. 534), in which they asserted that the plaintiffs "erroneously assume[] that injunctive and declaratory relief remain open to them in these cases," arguing that "[t]he Court's January 25 Order precludes such relief. . . ."  Id. at 1.  Reviewing the January 25 Order's holding that the plaintiffs failed to present evidence of actual antitrust injury, the defendants argued that "[h]aving failed to show that they suffered antitrust injury in support of their Robinson-Patman Act claims, or any causal connection between Defendants' conduct and the purported harm, Plaintiffs a fortiori cannot show the threat of antitrust injury necessary to support an injunction."  Id. at 2.  The Designated Defendants therefore asked leave of the Court to move for summary judgment as to the Designated Plaintiffs' claims for equitable relief prior to a decision being made on the Designated Plaintiffs' request for additional discovery or any further case management decisions.  Such leave was granted, and this motion was filed on April 10, 2007.

## DISCUSSION

This case presents a complicated question of statutory interpretation, the complexities of which are not fully addressed by either party in the briefing submitted to

---

[2]    Although the defendants filed a nominal opposition to the plaintiffs' Rule 59(e) motion, they do not dispute that the plaintiffs' complaints do seek such relief, but simply maintain that "Plaintiffs are entitled to no such relief," a contention which is relevant to the motion for summary judgment currently pending but does not undermine the plaintiffs' point that the January 25 Order incorrectly characterized their case as seeking only money damages.  Designated Defendants' Memorandum of Law in Response to Representative Plaintiffs' Motion to Correct a Mistake or Error in, or in the Alternative, to Alter or Amend, a Judgment or Order (docket no. 530), at 2.  The plaintiffs' Rule 59(e) motion is therefore granted, and the Court shall issue an amended order correcting the language of footnote 42.

the Court.  The fundamental question this Court is called upon to answer is whether an antitrust plaintiff, having failed to establish the element of actual antitrust injury for purposes of a claim for treble damages under Section 4 of the Clayton Act, can nevertheless maintain an action for injunctive relief under Section 16, on the premise that the same purportedly anticompetitive conduct which has been determined not to have harmed the plaintiff might nevertheless create a risk of threatened antitrust injury in the future.  While the Court ultimately concludes that, at least in the factual situation presented by this case, that question must be answered in the negative, an examination of the historical development of the antitrust laws and a survey of the controlling case law is necessary to place that answer into a properly limited and qualified context.

      1.     **The History of Sections 4 and 16**

Section 4 of the Clayton Act states that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States. . . [and] shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee," 15 U.S.C. § 15, while Section 16 states that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief. . . against threatened loss or damage by a violation of the antitrust laws. . . when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity. . . ." 15 U.S.C. § 26.  By its express terms, Section 4 contemplates a monetary award only to plaintiffs who have already sustained actual damages, while Section 16 permits a plaintiff to obtain an injunction prior to sustaining actual injury by demonstrating that the defendant's anticipated violation of the antitrust laws threatens to cause injury to the plaintiff if consummated.  This feature of Section 16, permitting equitable relief prior to the occurrence of actual injury, was expressly noted in the legislative history of Section 16 as an intended benefit of the legislation.

The House Report on that legislation recognized that

> [u]nder [the law in effect at the time], a person injured in his business and property by corporations or combinations acting in violation of the Sherman antitrust law, may recover loss and damage for such wrongful act. There is, however, no provision in the existing law authorizing a person, firm, corporation, or association to enjoin threatened loss or damage to his business or property by the commission of such unlawful acts, and the purpose of this section is to remedy such defect in the law.

H.R. Rep. No. 627, 63d Cong., 2d Sess., pt. 1, p. 2 (1914), quoted in Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 112 (1986). Representative McGillicuddy, a member of the House Judiciary Committee, said the following in reference to the statutory paradigm as it existed prior to the implementation of Section 16:

> [t]here is no provision under the present law [] to prevent threatened loss or damage even though it be irreparable. The practical effect of this is that a man would have to sit by and see his business ruined before he could take advantage of his remedy. In what condition is such a man to take up a long and costly lawsuit to defend his rights? The proposed bill solves this problem for the person, firm, or corporation threatened with loss or damage to property by providing injunctive relief against the threatened act that will cause such loss or damage. Under this most excellent provision a man does not have to wait until he is ruined in his business before he has his remedy.

51 Cong. Rec. 9261 (1914), quoted in Cargill, 479 U.S. at 112 n. 8.[3] While the legislative history may be read to suggest that Congress intended Section 16 to be limited in its application to situations in which a plaintiff does not have a ripe claim for damages under Section 4, the Supreme Court has adopted a contrary reading, observing that "the

---

[3]     Prior to the enactment of Section 16 of the Clayton Act, the Supreme Court had held, on the basis of an application of the canon of expressio unius est exclusio alterius to the text of Section 4 of the Sherman Act, that injunctive relief against anticipated violations of the antitrust laws was not available to private plaintiffs. See Minnesota v. Northern Sec. Co., 194 U.S. 48, 70-71 (1904) ("We cannot suppose it was intended that the enforcement of the act should depend in any degree upon original suits in equity instituted by the states or by individuals to prevent violations of its provisions. On the contrary. . . we think that its intention was to limit direct proceedings in equity to prevent and restrain such violations of the anti-trust act as cause injury to the general public. . . to those instituted in the name of the United States. . . by district attorneys of the United States, acting under the direction of the Attorney General. . . ."); Paine Lumber Co. v. Neal, 244 U.S. 459, 471 (1917) (Holmes, J.) ("[I]f the facts show any violation of the [Sherman Act], a private person cannot maintain a suit for an injunction under § 4 of the same. . . .") (Holmes, J.). Three Justices dissented from the Court's holding in Paine Lumber, arguing that "in the absence of some provision to the contrary, the right to relief by injunction, where irreparable injury is threatened through a violation of property rights, and there is no adequate remedy at law, rests upon settled principles of equity that were recognized in the constitutional grant of jurisdiction to the courts of the United States." Id. at 473 (Pitney, J., dissenting).

evident import of Congress' reference to 'threatened loss or damage' is not to constrict the availability of injunctive remedies against violations that have already begun or occurred, but rather to expand their availability against harms that are as yet unrealized." California v. American Stores Co., 495 U.S. 271, 282 n. 8 (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130 & n. 24 (1969)); see also Lucas Auto. Eng'g v. Bridgestone/Firestone, Inc., 140 F.3d 1228, 1236 (9th Cir. 1998) (quoting American Stores Co.).

The distinction between Section 4 and Section 16 was recognized by the Supreme Court in the 1927 case of Bedford Cut Stone Co. v. Journeyman Stone Cutters Ass'n, 274 U.S. 37, 54 (1927), in which the Court, reversing a judgment of the Seventh Circuit that affirmed a decree of the district court denying a preliminary injunction and dismissing the complaint against union workers who refused to work with construction stone cut by the petitioners' non-union workers, noted that "[t]he record does not disclose whether petitioners, at the time of bringing suit, had suffered actual injury; but that is not material.  An intent to restrain interstate commerce being shown, it is enough to justify equitable interposition by injunction if there be a dangerous probability that such injury will happen; and this clearly appears."  Likewise, in Zenith Radio, the Court reinstated an injunction imposed by the district court pursuant to Section 16, which had been vacated by the Sixth Circuit on the ground that the plaintiff's "failure to prove the fact of injury barred injunctive relief as well as treble damages."  395 U.S. at 130.  The Court rejected the Sixth Circuit's reasoning as "unsound," concluding that equitable relief under Section 16 "is characteristically available even though the plaintiff has not yet suffered actual injury; he need only demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur."  Id. (citation omitted).  The Court held that, notwithstanding the fact that the petitioner had failed to prove actual injury, the evidence established that the

respondent was conspiring to exclude the petitioner from the Canadian market for radios and television sets, a "clear violation of the antitrust laws" that made the entry of an injunction pursuant to Section 16 "wholly proper." Id. at 132. The principle that a plaintiff need not be entitled to actual damages under Section 4 of the Clayton Act in order to pursue an injunction against threatened injury under Section 16 has been recognized in many other cases. See, e.g., Hampton v. Graff Vending Co., 478 F.2d 527, 536 (5th Cir. 1973) (finding in the context of an action for price discrimination in violation of the Robinson-Patman Act that "[t]hat there is no entitlement to damages, however, is not dispositive of the question of permanent injunctive relief" pursuant to Section 16 of the Clayton Act); Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc., 754 F.2d 404, 407-08 (1st Cir. 1985) (district court's application of the requirements of Section 4 to a claim for equitable relief under Section 16 was reversible error; "[p]lainly, Congress empowered a broader range of plaintiffs to bring § 16 actions because the standards to be met are less exacting than those under § 4; under § 16, a plaintiff need show only a threat of injury rather than an accrued injury."); Datagate, Inc. v. Hewlett Packard Co., 941 F.2d 864, 869-70 (9th Cir. 1991) ("[S]ummary judgment was granted to HP because of Datagate's failure to show that it has suffered actual injury as a result of the new policy. However, section 16 of the Clayton Act 'invokes traditional principles of equity and authorizes injunctive relief upon the demonstration of threatened injury.' Because the district court only considered the evidence with regard to actual injury, and did not consider the threat of loss or damage to Datagate, we reverse and remand for the trial court to make such findings.") (quoting Zenith Radio, 395 U.S. at 130) (emphasis in original);[4] Metrix Warehouse, Inc. v. Daimler-Benz Aktiengesellschaft, No. 79-2066,

---

[4] Datagate further noted that "[t]o establish a claim for injunctive relief under section 16, Datagate must demonstrate 'a cognizable danger' of injury not just a 'mere possibility,'" and noted that evidence of customers' complaints about the new HP policy, while not sufficient to establish actual injury, "may be indicative of a threat of injury." Id. (quoting TRW, Inc. v. FTC, 647 F.2d 942, 954 (9th Cir. 1981)).

1983 WL 1932, at *1 (D. Md. November 10, 1983) ("More than a showing that the violation has occurred is necessary [to obtain injunctive relief under Section 16], although relief is available without a showing of actual injury.") (citation omitted). However, as shall be demonstrated below, the fact that the standard for injunctive relief under Section 16 is less exacting that the standard to be met when seeking actual damages under Section 4 does not mean that a plaintiff's failure to establish actual antitrust injury is always irrelevant to the Section 16 inquiry.

> 2. **The Concept of Antitrust Injury and its Applicability Under Sections 4 and 16**

While the defendants do not dispute the fact that Section 16 requires a plaintiff to allege only a threat of future injury rather than past or contemporaneous injury compensable under Section 4 in order to seek an injunction, they suggest that the recently developed concept of "antitrust injury" applies to claims for legal or equitable relief under the Clayton Act somewhat differently than the inquiry into the element of actual injury discussed in cases such as Bedford and Zenith Radio. The concept of antitrust injury, which is related to, but distinct from, both actual injury and antitrust standing,[5] was first articulated by the Supreme Court in Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477 (1977). In that case, the plaintiff-respondents, operators of bowling centers in New York, New Jersey, and Colorado, sued the defendant-appellant for damages under Section 4 of the Clayton Act for violation of Section 7 of that Act, 15 U.S.C. § 18, alleging that the defendant's act of taking over financially struggling bowling centers in the plaintiffs' local markets and operating them in

---

[5]     Courts occasionally refer to the question whether a plaintiff has alleged or proven an antitrust injury as a question of "standing," but such phrasing is imprecise. Although the inquiries into antitrust injury and antitrust standing often overlap, the antitrust injury component of a Section 4 or Section 16 claim, as discussed further below, requires a determination of whether the injury alleged by the plaintiff as a result of the defendant's violation of the antitrust laws is the kind of harm that the antitrust laws were intended to prevent, while the antitrust standing inquiry examines whether the plaintiff is the most efficient party to prosecute the action. See generally William H. Page, The Scope of Liability for Antitrust Violations, 37 Stan. L. Rev. 1445 (1985), cited in Cargill, 479 U.S. at 110 n. 5; see also Diseños Artisticos E Industriales, S.A. v. Work, 676 F. Supp. 1254, 1275 n. 18 (E.D.N.Y. 1987) (Glasser, J.) (citing Page).

competition with the plaintiffs damaged the plaintiffs by depriving them of the

additional profits they would have earned had the struggling centers gone out of

business, thereby decreasing competition among bowling centers in the local markets.[6]

The Court rejected this theory, holding that in order for

> the plaintiffs to recover treble damages on account of s 7 violations, they must prove more than injury causally linked to an illegal presence in the market. Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.

Id. at 489; see also J. Truett Payne Co. v. Chrysler Motors Corp., 451 U.S. 557, 562

(1981) (Section 4 of the Clayton Act requires a plaintiff to demonstrate, inter alia, that it

has suffered an "actual injury attributable to something the antitrust laws were designed

to prevent" in order to recover treble damages for the defendant's violation of the

antitrust laws), cited in January 25 Order, 472 F. Supp. 2d at 37. Because the

petitioner's actions promoted, rather than inhibited, competition in the relevant market,

the respondents were not entitled to relief under the antitrust laws, notwithstanding the

fact that they lost profits because of the petitioner's actions.

In Cargill, the case on which defendants principally rely in support of this motion,

the Court extended the applicability of the antitrust injury rule from the context of a

Section 4 claim for damages in which it was initially developed in Brunswick to the

context of a Section 16 claim for injunctive relief against an anticipated violation of the

antitrust laws, holding that "a plaintiff seeking injunctive relief under § 16 of the Clayton

---

[6]     Section 7 of the Clayton Act states in relevant part:
        No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another person engaged also in commerce or in any activity affecting commerce, where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.
15 U.S.C. § 18.

Act must show a threat of antitrust injury, and that a showing of loss or damage due merely to increased competition does not constitute such injury." 479 U.S. at 122. The plaintiff-respondent in Cargill, Monfort of Colorado, was the nation's fifth-largest beef packer,[7] which brought an action under Section 16 against the second-largest beef packer, Excel Corporation, and its parent company, Cargill, Inc., seeking to enjoin a merger between Excel and Spencer Beef, the third-largest beef packer. Monfort argued that the proposed merger would violate Section 7 of the Clayton Act by substantially reducing competition or creating a monopoly in the beef packing industry. Following a trial, the district court issued a memorandum and order in which it concluded that the plaintiff had proved its allegation that the merger would create a "cost-price squeeze" in the beef packing industry and that such injury would constitute antitrust injury, and therefore found that the proposed merger would violate Section 7 and granted the injunction prohibiting it; the district court's decision was affirmed by the Tenth Circuit. Id. at 108 (citing Monfort of Colorado, Inc. v. Cargill, Inc., 761 F.2d 570 (10th Cir. 1985)). On review of the Tenth Circuit's decision, the Supreme Court recognized that "[t]his case requires us to decide, at the outset, a question we have not previously addressed: whether a private plaintiff seeking an injunction under § 16 of the Clayton Act must show a threat of antitrust injury," a question the Court answered in the affirmative. Id. at 109. In reaching that result, the Court acknowledged that "[i]t is plain that § 16 and § 4 do differ in various ways," including by the fact that "§ 4 requires a plaintiff to show actual injury, but § 16 requires a showing only of 'threatened' loss or damage. . . ." 479 U.S. at 111. Notwithstanding these differences, the Court concluded that "[i]t would be anomalous. . . to read the Clayton Act to authorize a private plaintiff to secure an injunction against a threatened injury for which he would not be entitled to compensation if the injury actually occurred," and noted that "the legislative history of

---

[7]     I.e., an owner and operator of plants for the slaughter of cattle and the fabrication of beef.

§ 16 supports the view that § 16 affords private plaintiffs injunctive relief only for those injuries cognizable under § 4." Id. at 112. Concluding that "Sections 4 and 16 are thus best understood as providing complementary remedies for a single set of injuries," the Court held that "in order to seek injunctive relief under § 16, a private plaintiff must allege threatened loss or damage 'of the type the antitrust laws were designed [sic] to prevent and that flows from that which makes defendants' acts unlawful.'" Id. at 113 (quoting Brunswick, 429 U.S. at 489).[8] The Court then further concluded that the plaintiff's theories of injury did not constitute antitrust injury. Addressing Monfort's first theory, that after the contemplated merger it would be forced to lower its prices in order to compete with Excel's increased efficiency in production and therefore might be driven out of the beef packing market, the Court held that "the logic of Brunswick compels the conclusion that the threat of loss of profits due to possible price competition following a merger does not constitute a threat of antitrust injury." Id. at 116-17. Monfort's second theory of injury was that "after the merger Excel would attempt to drive Monfort out of business by engaging in sustained predatory pricing," which was defined as "pricing below an appropriate measure of cost for the purpose of eliminating competitors in the short run and reducing competition in the long run. . . a practice that harms both competitors and competition." Id. at 117-18 (emphasis in original). The Court noted that the Tenth Circuit found that Monfort had established a threat of injury from predatory pricing, but further observed that the appellate court's use of the term "predatory pricing" was not clear, finding that it could mean either: a) "that Monfort's allegation of losses from the above-cost 'price-cost squeeze' was

---

[8]     Cargill incorrectly quotes Brunswick as defining antitrust injury as an injury of the sort that the antitrust laws were "designed" to prevent; Brunswick actually uses the word "intended" rather than "designed." Compare Brunswick, 429 U.S. at 489, with Cargill, 479 U.S. at 113. Given that the words "designed" and "intended" are synonymous in this context, this Court does not infer any difference in meaning in the definitions of antitrust injury adopted by Brunswick and Cargill; indeed, it is clear that the Cargill Court intended to incorporate the concept of antitrust injury as defined in Brunswick into the context of a Section 16 claim.

equivalent to an allegation of injury from predatory conduct," or b) "that Monfort had shown a credible threat of injury from below-cost pricing." Id. at 118. Regarding the first interpretation, the Court held that Monfort could not establish a cognizable threat of antitrust injury because, as it noted in discussing its first theory of damages, "price competition is not predatory activity. . . ." Id. Regarding the second interpretation, the Court acknowledged that below-cost pricing can constitute predatory activity prohibited by the antitrust laws, but held that "[t]o the extent the judgment rests on this ground. . . it must also be reversed, because Monfort did not allege injury from below-cost pricing before the District Court." Id. at 119. Finding that Monfort had alleged no cognizable theory of antitrust injury, the Court reversed the court of appeals and the district court, holding that Monfort "failed to make the showing § 16 requires" in order to enjoin the merger of its competitors. Id. at 122.

### 3. The Plaintiffs' Failure to Establish Actual Antitrust Injury Precludes Their Claim for Equitable Relief Under the Circumstances Presented in This Case

As Cargill makes clear, a plaintiff seeking equitable relief under Section 16 need only establish the existence of a threatened antitrust injury, not a past or contemporaneous injury, arising from the defendant's anticompetitive conduct in order to prevail.[9] As a result of Section 16's more liberal standard, it is usually the case that a plaintiff's failure to establish the existence of actual antitrust injury in pursuit of a claim for treble damages under Section 4 does not necessarily preclude a claim for equitable relief under Section 16. However, a relatively narrow line of precedent running through

---

[9]     The Second Circuit expressly recognized this distinction in Consol. Gold Fields PLC v. Minorco, S.A. 871 F.2d 252 (2d Cir. 1989). In that case, the plaintiff obtained a preliminary injunction from the district court against a hostile takeover, arguing that the hostile bidder would use its control over the plaintiff following the takeover to shut down the plaintiff's gold mining operations, thereby reducing competition in the market. After a brief discussion of Cargill, the Second Circuit affirmed the district court's determination that the plaintiff had alleged a threat of antitrust injury sufficient to seek injunctive relief under Section 16, noting that the plaintiff's contention "that it would suffer reduced profits because the takeover will enable outside corporate forces to cause it to restrain its own competitiveness and thereby reduce competition in the relevant market. . . is precisely the type that the antitrust laws were designed to protect against." Id. at 257-58.

the larger body of Section 16 case law recognizes an exception to that general principle when the allegedly anticompetitive conduct has been ongoing for a sufficient period of time that the plaintiff's failure to demonstrate actual injury gives rise to a reasonable presumption that, absent a change in circumstances, the conduct at issue also does not create a risk of future antitrust injury. While that exception has never been acknowledged by the Second Circuit, the Court finds the reasoning of those cases persuasive and applicable to the Designated Plaintiffs' Section 16 claims in this case.

### a. Section 16 Requires a Plaintiff to Demonstrate Only Threatened Antitrust Injury

In opposition to the defendants' motion for summary judgment, the plaintiffs rely on a number of cases that apply the principle recognized in Cargill, that an antitrust plaintiff need establish only threatened antitrust injury, rather than past or contemporaneous injury, in order to prevail on a claim for equitable relief under Section 16. In H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc., 879 F.2d 1005 (2d Cir. 1989), the plaintiffs, a distributor of dental x-ray equipment and a related mail-order vendor of that equipment, brought several antitrust claims against the manufacturer and two competing distributors of the equipment, alleging, inter alia, price discrimination in violation of the Robinson-Patman Act, and seeking monetary damages under Section 4 of the Clayton Act as well as equitable relief under Section 16. The district court granted summary judgment to the defendants as to both claims on the ground that the plaintiffs had failed to establish antitrust injury. The Second Circuit affirmed the dismissal of the Section 4 claims for the reason identified by the district court, holding that "[t]he three instances of injury cited by plaintiffs, and discounted by the district court, are inadequate to make the required showing of antitrust injury," id. at 1021, because even assuming price discrimination in violation of the Robinson-Patman Act, the plaintiffs failed to "establish some connection between those violations and injuries to the plaintiffs in the form of lost sales or profits." Id. at 1022. However,

the court rejected the district court's conclusion that the plaintiffs' failure to establish actual antitrust injury for purposes of their Section 4 claim also required dismissal of the Section 16 claim, noting that "a determination which assumes a statutory violation without a demonstration of antitrust injury does not provide a basis to dismiss plaintiffs' Robinson-Patman Act claim insofar as it seeks [equitable] relief." Id. The court affirmed the dismissal of the Section 16 claims on a different ground, however, noting that "[s]ince [the defendant manufacturer] is no longer selling to [the plaintiffs], as is its right, there is no danger that it will sell to them on discriminatory terms. . . and accordingly no basis for a Robinson-Patman injunction." Id. (citation omitted).[10]

A very similar situation was presented to the Tenth Circuit in B-S Steel of Kansas, Inc. v. Texas Indus., Inc., 439 F.3d 653 (10th Cir. 2006). In that case, the plaintiff, an independent distributor of wide flange steel beams, brought an action alleging, inter alia, price discrimination in violation of the Robinson Patman Act against four steel manufacturers that extended various sales incentives including rebates and discounts to five favored purchasers, but not to the plaintiff. One of the four defendants, Chaparral Steel Midlothian, L.P. ("Midlothian"), moved to stay the action and to refer all of the claims against it arising from transactions prior to April 3, 2001, to arbitration, pursuant to an arbitration clause in its contract with the plaintiff. Discovery in the

---

[10]     In seeking to distinguish Hayden from the present case, the Designated Defendants place peculiarly heavy emphasis on the fact that the Hayden court ultimately affirmed summary judgment in favor of the defendants, albeit on grounds that are concededly not present in this case. See Def. Mem. at 11 ("First, the Second Circuit in Hayden affirmed the grant of summary judgment as to plaintiffs' claim for injunctive relief, albeit on different grounds."); Reply Mem. at 13 ("Defendants find it curious that Plaintiffs continue to rely on a case which affirmed the grant of summary judgment as to the plaintiff's claim for an injunction and in which the claimant actually proffered evidence of competitors receiving a lower price. . . .") (emphasis in original). The Court is somewhat at a loss to comprehend why the Designated Defendants apparently view the ultimate outcome of Hayden to be of such significance in undermining the Designated Plaintiffs' Section 16 claim when there is no doubt in this case that, unlike Hayden, the Designated Plaintiffs continue to purchase the Designated Defendants' BNPDs. Obviously, this Court is aware of the fact that defendants' motions for summary judgment in antitrust actions are sometimes granted, and is capable of appreciating that the legal reasoning applied by one case might dictate a different outcome in a subsequent case in which the facts found to be dispositive in the first case are not present. The Court therefore would have found a more substantive discussion of the Hayden court's reasoning to be a much more useful undertaking on the Designated Defendants' part than their talismanic invocation of Hayden's bottom line.

arbitration proceeding against Midlothian and in the district court action against the other three defendants proceeded in parallel, and the plaintiff submitted the same expert report, purporting to quantify its actual damages, in both proceedings. The arbitration panel denied B-S Steel's claims for damages under Section 4 of the Clayton Act, finding that Midlothian had engaged in unjustified price discrimination during the period at issue, but, as in this case, "conclud[ing] that B-S Steel had failed to meet its burden of proving that it had suffered antitrust injury because it could not establish a causal connection between any incentives given to other buyers and any harm to B-S Steel." Id. at 658. When the district court subsequently confirmed the arbitration decision in Midlothian's favor, the remaining three defendants moved for summary judgment, "arguing that the arbitration award disposed of B-S Steel's claims for damages under the doctrines of res judicata and collateral estoppel. . . and that B-S Steel lacked standing to seek injunctive relief." Id. at 659.[11] The district court granted the defendants' motion, finding the arbitration decision preclusive on the question of B-S Steel's actual damages, and that B-S Steel's failure to provide evidence of actual damage likewise precluded its claim for injunctive relief.

On appeal, the Tenth Circuit affirmed the district court's judgment on the preclusive effect of the arbitration decision, but rejected its conclusion that "B-S Steel lacked standing to pursue injunctive relief because the arbitrators had already determined that it could not show antitrust injury for purposes of its pre-April 3, 2001, damages claim." Id. at 666. The court held that the district court's conclusion that the failure to show evidence of actual antitrust injury necessarily precludes the availability of injunctive relief "is in error. . . because it ignores the distinction. . . between showing

---

[11]     The district and circuit court opinions in B-S Steel follow the pattern, addressed in note 5, supra, of discussing the question of antitrust injury in terms of "standing" rather than as a substantive element of the cause of action. However, as the subsequent discussion shall demonstrate, the Tenth Circuit's analysis of the issue is essentially identical to that of other cases, including Hayden, which, correctly in this Court's view, treat the question of antitrust injury as a substantive element of an antitrust claim.

that antitrust injury actually occurred in the past and showing that it might occur in the future. . . ." Id. at 668. The court further noted that, because the standards for relief under Section 4 and Section 16 are not identical, "simply because the arbitrators concluded that B-S- Steel failed to meet its evidentiary burden in regard to past violations does not mean, as a matter of law, that it would be impossible for B-S Steel to show a threat of future injury." Id. However, the Tenth Circuit ultimately affirmed the district court's grant of summary judgment as to the Section 16 claim because, as in Hayden, the defendants no longer maintained a commercial relationship. Because "B-S Steel [was] no longer a purchaser of [steel beams] from the appellees and has failed to show any possibility that it might resume such purchases in the future," it could not demonstrate the threat of antitrust injury necessary to seek equitable relief under Section 16. Id. (citing Hayden, 879 F.2d at 1022).

The Ninth Circuit addressed another very similar case in Lucas Auto. Eng'g v. Bridgestone/Firestone, Inc., 140 F.3d 1228 (9th Cir. 1998), in which it held that a plaintiff that could not demonstrate a cognizable antitrust injury for purposes of a claim for damages under Section 4 could nevertheless pursue a claim for equitable relief under Section 16. In Lucas Automotive, the plaintiff had been a distributor and downstream purchaser of Firestone vintage tires[12] from the 1970s until 1992, when Bridgestone/Firestone, Inc. ("BFI"), awarded an exclusive distributorship for Firestone Tires to Coker Tires, the plaintiff's chief competitor in the vintage tires market. The Firestone contract, in addition to its other exclusive distributorships, gave Coker Tire exclusive control of 90% of the relevant market in "original equipment" vintage tires. About a year later, Lucas Automotive filed an action against Coker Tire, BFI, and The Firestone Tire and Rubber Company of New Zealand, Ltd. ("FNZ"), a subsidiary of BFI

---

[12]     Vintage tires are "replicas of the tires which originally were sold on vintage, antique and collector cars, and are no longer made for use on modern cars." Id. at 1230.

which had been the manufacturer of the vintage tires during the relevant period.  The complaint alleged, <u>inter alia</u>, that the defendants had violated Section 7 of the Clayton Act, and sought both treble damages under Section 4 of the Clayton Act and an order pursuant to Section 16 compelling divestiture of Coker Tire's exclusive distributorship of Firestone vintage tires.  The district court granted a motion by BFI and BNZ for summary judgment, finding that they lacked specific intent to monopolize and that there were legitimate business reasons for their preference of Coker Tire over Lucas Automotive; the plaintiff did not appeal that ruling.  The court then granted a motion for summary judgment by Coker Tire, holding, <u>inter alia</u>, that summary judgment was appropriate because Lucas Automotive did not "produce[] evidence to show that its losses flow from any alleged monopoly by Coker Tire," and that it did not "produce[] any evidence to show that Coker Tire has in fact raised prices on the brand name vintage tires it distributes. . . ."  <u>Id.</u> at 1231.

Lucas Automotive appealed the grant of summary judgment in favor of Coker Tire.  The Ninth Circuit affirmed summary judgment as to the claims for treble damages under Section 4, but reversed the district court as to the Section 16 claim for divestiture.  In analyzing the question whether summary judgment was warranted on the plaintiff's Section 16 claim, the court noted at the outset that "[t]o maintain an antitrust divestiture suit [under Section 16], a private plaintiff must generally meet all the requirements that apply to the damages plaintiff, except that the injury itself need only be threatened, damage need not be quantified, and occasionally a party too remote for damages might be granted an injunction."  <u>Id.</u> at 1234 (citing 2 Areeda & Hovenkamp, <u>Antitrust Law</u> ¶ 360, at 193-94).  The first part of the court's analysis held that Lucas Automotive lacked standing as a competitor to seek a divestiture order because the injury it suffered was particular to itself as a competitor, and not to competition in general; <u>i.e.</u>, "because Lucas Automotive cannot show that it would not be similarly

threatened had a small business acquired the right to manufacture and to distribute Firestone Tires, Lucas Automotive lacks competitor standing to sue for divestiture under § 16." Id. at 1235 (citing Brunswick, 429 U.S. at 487; Cargill, 479 U.S. at 113; 2 Areeda & Hovenkamp, Antitrust Law ¶ 349.2a, at 480-81). However, the second part of the Section 16 analysis found that Lucas Automotive had consumer standing to assert a Section 16 claim against Coker Tire on the theory that Coker Tire's monopolistic control over the vintage tire market would harm competition. Underlying the holding of the second part of the Court's Section 16 analysis was its conclusion that "[t]he district court erred in failing to distinguish Lucas Automotive's standing to sue for equitable relief under § 7 of the Clayton Act from its standing to sue for treble damages," in support of which it emphasized that "an antitrust plaintiff seeking injunctive relief need only show a threatened injury, not an actual one." 140 F.3d at 1235 (emphasis in original). The court then concluded that, notwithstanding the fact that Lucas Automotive lacked standing to seek damages under Section 4, the evidence it presented demonstrated that "Coker Tire's conduct threatens 'substantially to lessen competition' and 'tends to create a monopoly' at the primary line level of the vintage tire market," which it recognized as "precisely the antitrust harm § 7 was intended to protect against." Id. at 1236. The court therefore held that "Lucas Automotive. . . as a customer in a market controlled by a monopolist, has standing to assert a § 7 claim for equitable relief, including divestiture, under § 16," and reversed the district court's decision to the contrary. Id. at 1237.

In American Booksellers Ass'n, Inc. v. Barnes & Noble, Inc., 135 F. Supp. 2d 1031 (N.D. Cal. 2001), another case upon which the plaintiffs rely heavily, an association of independent booksellers brought an action for damages and injunctive relief against several defendants associated with bookstore chains, alleging price discrimination from book publishers and distributors in the chains' favor in violation of the Robinson-

Patman Act. The district court granted the defendants' motions for summary judgment as to the plaintiffs' claims for damages, but denied their motions for summary judgment as to the plaintiffs' Section 16 claims, observing that "[i]n order to obtain an injunction. . . each plaintiff does not need to prove that it was actually injured by the unlawful price discrimination. Instead, the plaintiffs must show only that there is a reasonable possibility that the price discrimination may harm competition. . . ." Id. at 1036-37. Later in its opinion, the district court elaborated on that point, explaining that the defendants' challenge to the plaintiffs' expert report provided no basis for granting summary judgment on the plaintiffs' Section 16 claim because "plaintiffs do not have to show that they suffered actual injury in order to obtain injunctive relief under the Robinson-Patman Act. Instead, plaintiffs must show only that there is a reasonable possibility that the unlawful price discrimination received by defendants may harm competition." Id. at 1037 (emphasis in original); see also Balaklaw v. Lovell, 822 F. Supp. 892 (N.D.N.Y. 1993). In Balaklaw, the district court recognized that

> [u]nder section 16 of [the Clayton] Act, a plaintiff need only establish 'threatened' loss or damage, rather than actual loss or damage, in establishing a violation under this section. As a result of these differences, the standing requirement for a section 16 claim is somewhat less demanding: courts are less concerned about whether a plaintiff is an efficient enforcer of the antitrust laws. However, as under section 4, for section 16 injunctive relief, a plaintiff still must allege 'antitrust injury' (in the form of threatened loss or damage) as well as the defendant's causal responsibility for that injury.

Id. at 898 (emphasis added, citations omitted).

The Designated Defendants, who on one hand expressly disavow the position that a plaintiff's failure to establish actual antitrust injury for purposes of a Section 4 claim automatically precludes that plaintiff's ability to pursue equitable relief under Section 16,[13] and on the other hand seemingly assert that very argument in favor of their motion

---

[13]     See Reply Mem. at 3 ("[N]ot once did the Defendants argue that a failure to prove damages, in and of itself, precludes injunctive relief.").

for summary judgment as to the plaintiff's Section 16 claims,[14] correctly argue that neither the Second Circuit's <u>dicta</u> in <u>Hayden</u> nor the district court's decision in <u>American Booksellers</u> are binding on this Court, and further suggest that even if those cases do support the Designated Plaintiffs' position, the Court should nevertheless grant the Designated Defendants' motion for summary judgment because "<u>Hayden</u> and <u>American Booksellers</u> cannot supplant <u>Cargill</u>." Reply Mem. at 13. The Designated Defendants' perception that <u>Cargill</u>'s holding is in tension with that of <u>Hayden</u>, <u>American Booksellers</u>, and presumably the other cases discussed above is apparently grounded in their view that <u>Cargill</u> establishes that "Sections 4 and 16 share the common element of antitrust injury," subject only to the "temporal distinction" between actual and threatened antitrust injury. <u>Id.</u> at 8. The Designated Defendants' characterization of <u>Cargill</u> and of the relationship between Section 4 and Section 16 misleadingly suggests a non-existent parity between those sections by eliding the qualitative distinction between the real and the merely hypothetical or contingent that Congress expressly incorporated into the Clayton Act and which was recognized by <u>Cargill</u>, <u>Hayden</u>, and all of the cases cited in this section. Far from seeking to "supplant" <u>Cargill</u>, these cases simply acknowledge and apply the differences between Sections 4 and 16 recognized by the Supreme Court in <u>Cargill</u> to conclude, correctly, the very point that the Designated Defendants elsewhere purport to acknowledge: that in the usual antitrust case, a plaintiff need not demonstrate actual antitrust injury in order to obtain injunctive relief

---

[14]     For example, the Designated Defendants' moving brief argues on the first page that "[w]hether [the plaintiffs] seek monetary damages or equitable relief in the form of an injunction, the law is clear that proof of antitrust injury is an essential element of their claims." Def. Mem. at 1; <u>see also id.</u> at 4 ("Whether [Plaintiffs] seek monetary damages or equitable relief in the form of an injunction, the law is clear that proof of antitrust injury is an essential element of their claims. Their failure to raise any genuine issue of material fact as to antitrust injury requires granting Defendants summary judgment as to Plaintiffs' claims for declaratory and injunctive relief."); <u>id.</u> (arguing that "[t]he [January 25] Order could not have been more clear, and indeed, the Court found that Plaintiffs had failed in numerous ways to raise a genuine issue of material fact as to any of their damage theories," and arguing on the basis of that fact that the plaintiffs' "failure to raise any genuine issue of material fact as to antitrust injury requires granting Defendants summary judgment as to Plaintiffs' claims for declaratory and injunctive relief.").

under Section 16.  A violation of Section 16 can be analogous to an inchoate criminal offense– the act giving rise to the claim for equitable relief need not have actually occurred, and if it has occurred, it need not have caused actual injury to the party in whom the law nevertheless recognizes a right to seek equitable relief.  Thus, no tension or inconsistency exists between <u>Cargill</u>, <u>Hayden</u>, and the other cases discussed in this section, and in the usual case, the fact that this Court has determined that the Designated Plaintiffs have not established the element of actual antitrust injury would not be a sufficient basis upon which to grant summary judgment in favor of the Designated Defendants as to the Section 16 claims against them, because actual antitrust injury is not an element of a Section 16 claim.  However, for the reasons discussed below, this case is not the usual antitrust case, and, while actual antitrust injury is not a formal element of the Designated Plaintiffs' Section 16 claims, their failure to establish actual injury is sufficiently relevant to the merits of their claims for equitable relief as to be dispositive of those claims.

> **b.    Where the Purportedly Anticompetitive Conduct has been Ongoing for Some Time, Failure to Establish Actual Antitrust Injury Precludes a Demonstration of Threatened Antitrust Injury**

Although the Designated Defendants overstate their case in attempting to distinguish the line of cases discussed above from <u>Cargill</u> and from this case, and misleadingly minimize the degree of distinction between the legal standards imposed on plaintiffs seeking damages under Section 4 of the Clayton Act and those seeking equitable relief under Section 16, they also point, albeit obliquely, to an exception to the general rule discussed above that the failure to establish actual antitrust injury is not usually fatal to a Section 16 claim.  While it is true that the standards for obtaining relief under Section 4 and Section 16 are not identical in most cases, the requirements of the two sections coalesce in situations where the purportedly anticompetitive conduct has been ongoing for a substantial period of time.  In those cases, a plaintiff's failure to

demonstrate actual injury has the effect of precluding the possibility of establishing a threat of future injury from the same conduct.

The first case to illustrate that principle was Judge Wright's opinion in <u>Merit Motors, Inc. v. Chrysler Corp.</u>, 569 F.2d 666 (D.C. Cir. 1977) (Wright, J.). <u>Merit Motors</u> affirmed the grant of summary judgment in favor of the defendant automobile manufacturer as to the plaintiffs' claims for damages and injunctive relief. The plaintiffs, two dealers of Chrysler automobiles, alleged that Chrysler's programs offering subsidies to "fleet purchasers"– those which purchased 10 or more automobiles in a 12-month period– violated the Sherman Act and the Robinson Patman Act and caused damage to the plaintiffs' business. The district court granted summary judgment on the ground that the plaintiffs' expert report failed to establish that the programs, which had been in operation for approximately 8 years when the action was commenced,[15] caused any actual injury to the plaintiffs' businesses. In affirming the summary judgment, the appellate court noted that the parties and the district court had focused primarily on the viability of the plaintiffs' allegations of injury with respect to their Section 4 claims, but added that it must address the Section 16 claim separately. <u>Id.</u> at 668 n. 2. The court recognized that "[t]he showing of injury required for a suit seeking an injunction is less than that required to sue for treble damages since only threatened rather than actual damages must be proved," but noted an important exception to that general principle: "where the programs in question have been in existence long enough for their potential effects on dealers to manifest themselves, the difference in the two standards is not so consequential." <u>Id.</u> at 670 n. 14. The court therefore proceeded to examine the plaintiffs' expert report, affirming summary judgment as to both the Section 4 and

<hr />

[15] The court notes that the subsidy program at issue had been in effect since "around 1962." Thus, assuming the case was commenced in 1970, as the docket number of the district court proceeding (Civ. A. No. 2000-70) appears to indicate, the subsidy program had been in effect for about 8 years when the complaint was filed.

Section 16 claims on the basis of its conclusion that the expert report failed to create a genuine issue of fact as to whether the plaintiffs had sustained actual injury from the operation of Chrysler's incentive programs.

The <u>Merit Motors</u> principle was recognized and applied in two decisions by the United States District Court for the Southern District of New York in the case of <u>Ashley Meadows Farm, Inc. v. American Horse Shows Association, Inc.</u>  <u>See</u> <u>Ashley Meadows Farm, Inc. v. American Horse Shows Ass'n, Inc.</u>, 617 F. Supp. 1058 (S.D.N.Y. 1985) ("<u>Ashley Meadows I</u>"); <u>Ashley Meadows Farm, Inc. v. American Horse Shows Ass'n, Inc.</u>, 624 F. Supp. 856 (S.D.N.Y. 1985) ("<u>Ashley Meadows II</u>").  The Designated Defendants cite <u>Ashley Meadows II</u> for the proposition that "when a plaintiff fails to raise any genuine issue of material fact as to past or contemporaneous injury. . . the threat of future harm necessary to support an injunction is lacking."  Reply Mem. at 4.  This is a fair paraphrase of <u>Ashley Meadows II</u>'s language, and appears at first glance to be inconsistent with <u>Cargill</u>, <u>Hayden</u>, and the other cases discussed in the previous section, but it is necessary to examine the history of the <u>Ashley Meadows</u> litigation in order to appreciate the context in which the court's statement was made.  <u>Ashley Meadows</u> involved an antitrust action by an operator of horse shows against the American Horse Shows Association, a national organization that set forth guidelines governing horse shows and organized the scheduling of shows for its 40,000 members.  The plaintiff alleged that the defendant's "Mileage Rule," which "establishe[d] minimum distances between horse shows recognized by the Association and grant[ed] priority to established recognized shows over other shows" prevented the plaintiff from operating horse shows on the most profitable dates.  <u>Ashley Meadows I</u>, 617 F. Supp. at 1061.  While discovery was underway, the defendant moved for summary judgment on the ground that the plaintiff lacked antitrust standing because it was unable to demonstrate that it had suffered any injury traceable to the defendant's conduct.  The defendant's initial motion

was denied on the basis of the district court's assumption that the plaintiff would introduce its own financial records to demonstrate the financial injury it claimed to have suffered.  See id. at 1060 (citing earlier order dated September 20, 1984).  However, the plaintiff subsequently sought to voluntarily dismiss its Section 4 claims and responded as follows to an interrogatory requesting that it quantify the amount of financial loss that it sustained as a result of the defendant's allegedly anticompetitive conduct:

> As defendant is aware, plaintiff seeks leave of [the] court to dismiss its damage claims in this action without prejudice.  Accordingly, the provision of answers concerning the dollar amount of plaintiff's damages would be unduly burdensome, since the dollar amount of its damages will not lead to the discovery of admissible evidence concerning plaintiff's claims for injunctive relief.

Id. at 1061.  The plaintiff further "stated in its responses that it was 'unable' to quantify the amount of damage it had sustained, that it no longer intended to compare at trial any of its shows with any other horse shows, and that it did not intend to call its own expert witness at trial."  Id.  The district court granted the defendant's motion for summary judgment, but carefully noted that the absence of actual injury does not in all cases deprive a plaintiff of the right to pursue equitable relief against a threatened injury.  The court wrote that

> [t]he standard for establishing injury sufficient to support a claim under § 16 of the Clayton Act is more liberal than the standard applied to damage claims under § 4.  Section 16 provides a right of action for threatened as well as past injuries, for indirect injuries[,] and in certain circumstances, for injuries which do not strictly threaten the 'commercial interests' of a party.

Id. at 1063 (citations omitted).  However, the court further observed that the distinction between the requirements of Section 4 and Section 16 were "largely irrelevant" in the specific circumstances of the case, because the type of injury that the plaintiff claimed to have suffered was "a direct injury to its profitability, a business and commercial interest."  Id.  Moreover, the court noted that "the actions constituting the basis for the Farm's claim extend back to 1980," observing that "[i]n view of the long-standing nature of alleged injury and in the absence of any change in circumstances, the Farm cannot

claim that it faces the threat of any greater harm than has allegedly occurred in the past." Id. at 1063. The district court therefore concluded that "[u]nder these circumstances. . . it would be inappropriate to allow speculation about possible injury to the Farm. Instead, the Farm's evidence regarding its past and present injury. . . will be determinative as to whether it has standing to bring this antitrust action." Id. Finally, the court recognized that "[t]he Farm need not quantify the damages sustained in order to obtain injunctive relief. . . [but t]he Farm nevertheless must set forth sufficient facts regarding its business operations to demonstrate that it has suffered some injury." Id. at 1064-65. Because the plaintiff's failure to make any showing of actual injury flowing from the defendant's conduct undermined any suggestion of a threat of future antitrust injury, the court held that summary judgment was appropriate as to the Section 16 claim.

In Ashley Meadows II, the district court denied the plaintiff's motion for reargument of the summary judgment motion it granted in Ashley Meadows I. The plaintiff argued that the district court's first opinion had misconstrued the law in several ways, and offered, for the first time, to call expert witnesses to testify in support of its assertion that it was injured by the defendant's Mileage Rule. The district court found the proposed expert testimony to be insufficient, noting that

> [i]t is the Farm's view that it can avoid the complexity of demonstrating that its revenues would increase in the future because it asks only for injunctive relief, having chosen to abandon its damage claims. However, individual injury, whether past or future, remains the crux of a private action, and where a plaintiff is unable "to cite to any contemporaneous damages from which a reasonable inference of future damages could be drawn," the "significant threat" of injury that would entitle it to injunctive relief has not been shown.

624 F. Supp. at 858 (quoting Machovec v. Council for the Nat'l Reg. of Health Serv. Providers in Psych., Inc., 616 F. Supp. 258, 267 (E.D. Va.1985)). In Machovec, the district court granted summary judgment to the defendant in an antitrust action brought by four psychologists who were denied listing in a "National Registry" of

licensed or certified psychologists published by the defendants non-profit organization. The plaintiffs alleged that their exclusion constituted an illegal boycott and concerted refusal to deal in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and sought treble damages under Section 4 of the Clayton Act and injunctive relief under Section 16. The court granted summary judgment on the Section 4 claims on the basis of its determination that the plaintiffs' deposition testimony undermined their allegations regarding actual damages. Turning to the Section 16 claims, the court acknowledged that "to be entitled to injunctive relief, plaintiffs 'need only demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur' that proximately resulted from defendants' putative antitrust violations ," but concluded that

> [i]n assaying the legal sufficiency of the alleged 'significant threat of injury,' we are persuaded by plaintiffs' inability to cite to any contemporaneous damages from which a reasonable inference of future damages could be drawn. Given plaintiffs' licensure, eligibility for insurance reimbursement, successful private practices, and professional credentials, there is good reason to conclude that a § 16 'significant threat' has not been shown.

616 F. Supp. at 266-67 (quoting <u>Zenith Radio</u>, 395 U.S. at 130). Thus, <u>Ashley Meadows II</u>'s statement that an antitrust plaintiff must cite contemporaneous damages in order to establish an inference of future harm is a truncation of <u>Machovec</u>'s quotation of <u>Zenith Radio</u>, which made clear that Section 16 is satisfied by a demonstration of contemporary injury <u>or</u> by providing evidence of an impending violation of the antitrust laws likely to cause injury to the plaintiff.

Properly read, <u>Ashley Meadows II</u> is simply a restatement of the principle adopted by <u>Ashley Meadows I</u> and <u>Merit Motors</u>: that where the allegedly anticompetitive conduct has been ongoing for a substantial period of time, the distinction between Section 4's requirement of actual injury and Section 16's more

liberal requirement of threatened injury tends to shrink or disappear.[16]  If the plaintiff

cannot show itself to have suffered some actual injury of the type the antitrust laws were

intended to prevent from a purportedly anticompetitive practice in which the defendant

has engaged for a substantial portion of time, the plaintiff is effectively presumed to be

unable to establish the existence of a threat of future injury arising from that same

conduct in the future, at least absent some plausible explanation why a practice that has

not created cognizable injury in the past creates a credible risk of doing so in the future

if permitted to continue.  The logic behind this principle is both obvious and compelling.

While it would be both impractical and unfair to require a plaintiff seeking to enjoin an

allegedly anticompetitive practice prior to the commencement of that practice to

establish antitrust injury with the same degree of concreteness that would be required of

a plaintiff seeking treble damages under Section 4 for an injury it has already suffered, it

is fair and reasonable to expect a plaintiff seeking to enjoin an ongoing practice to be

able to demonstrate some degree of actual injury that it has suffered from that practice,

or, at least, to identify a recent or anticipated change in circumstances that might

plausibly cause an antitrust injury to the plaintiff in the future if the practice is not

enjoined.

     The Designated Defendants are entitled to summary judgment as to the

Designated Plaintiffs' Section 16 claims precisely because the Designated Plaintiffs have

been unable to make such a showing here, or to identify any changed circumstances that

---

[16]      This principle was also recognized in <u>dicta</u> by the Third Circuit in <u>Van Dyk Research Corp. v. Xerox Corp.</u>, 631 F.2d 251 (3d Cir. 1980).  In that case, the plaintiff, which had been in business for approximately eleven years, approximately seven of which were spent as an aspiring competitor of Xerox in the photocopier market, brought an antitrust action seeking damages and injunctive relief against Xerox which alleged that Xerox's monopolistic control over the relevant market was the ultimate cause of the plaintiff's financial hardships and business misfortunes, which had driven the plaintiff to file for bankruptcy.  Following a bench trial, the district court granted judgment for the defendant, finding that because Xerox had "nothing to do" with the plaintiff's failed business relationships and inability to secure adequate financing, the plaintiff could not establish a causal connection between Xerox's alleged violations of the antitrust laws and the plaintiff's alleged injury.  <u>Id.</u> at 254.  The Third Circuit affirmed the district court's determination, and noted that "although injunctive relief may be appropriate where damages are not, in the circumstances present here, the failure to prove the fact of injury is conclusive as to both forms of relief."  <u>Id.</u> at 255 n. 2 (citing <u>Merit Motors</u>, 569 F.2d at 668 n. 2).

would overcome the presumption that their failure to demonstrate actual injury arising from the Designated Defendants' allegedly discriminatory pricing methods indicates an absence of a plausible threat of future antitrust injury. When the Designated Plaintiffs submitted their 1995 Expert Report, the Designated Defendants' purportedly anticompetitive pricing structure had allegedly been in effect for at least 10 years. See In re Brand Name Prescription Drugs Antitrust Litig., No. No. 94 C 897, 1996 WL 167350, at *1 (Kocoras, J.) (N.D. Ill. April 4, 1996) ("Although it is not clear exactly when this cartel was allegedly formed, the plaintiffs claim that the agreements and understandings at issue date back at least as far as the early 1980s."). Yet, despite the longstanding nature of the practice, the Designated Plaintiffs were unable to demonstrate any genuine issue of material fact as to the question of their actual antitrust injury so as to survive the Designated Defendants' motion for summary judgment as to the Section 4 claims, which was granted in the January 25 Order. How, then, is it reasonable to assume that the same practice creates a credible threat of antitrust injury to the Designated Plaintiffs in the future when it has failed to inflict such injury in the past? Neither law nor equity favor granting the Designated Plaintiffs the benefit of such a remote doubt, nor is there any reason to give the Designated Plaintiffs what they are actually seeking in their renewed discovery motion and their opposition to this motion: a second opportunity to carry the evidentiary burden of demonstrating some actual injury caused by the Designated Defendants' conduct, which the Designated Plaintiffs failed to establish in their 1995 Expert Report. Having failed to submit evidence sufficient to demonstrate that they have sustained an actual antitrust injury as a result of the Designated Defendants' alleged price discrimination, the Designated Plaintiffs cannot now seek a second bite at the proverbial apple under the guise of equitable relief.

Though it ultimately chooses to follow the principle expressed by Merit Motors and the cases following it, the Court would be remiss were it not to recognize that some

tension exists between the lines of precedent herein discussed. The interpretive inconsistency of the relationship between Section 4 and Section 16 manifested by, e.g., Hayden, B-S Steel, and American Booksellers on one hand, and Merit Motors and Ashley Meadows on the other, provides scant guidance to this Court in arriving at a resolution of this motion. In the final analysis, the Court is persuaded by its reading of Cargill.

In footnote 8, the Cargill Court makes reference to an excerpt from a description of Section 16 by Representative McGillicuddy, a member of the House Judiciary Committee, who stated, in part:

> Under the present law any person injured in his business or property by acts in violation of the Sherman antitrust law may recover his damage. . . . There is no provision under the present law, however, to prevent threatened loss or damage even though it be irreparable. The practical effect of this is that a man would have to sit by and see his business ruined before he could take advantage of his remedy. In what condition is such a man to take up a long and costly lawsuit to defend his rights? The proposed bill solves this problem for the person, firm, or corporation threatened with loss or damage to property by providing injunctive relief against the threatened act that will cause such loss or damage. Under this most excellent provision a man does not have to wait until he is ruined in his business before he has his remedy. Thus the bill not only protects the individual from loss or damage, but it relieves him of the tremendous burden of long and expensive litigation, often intolerable.

Cong. Rec. 9261 (1914), quoted in Cargill, 479 U.S. at 112. As that understanding of Section 16 reveals, it was designed to complete, to supply what was missing, in the remedy provided by Section 4. The Cargill Court understood that to be the objective of Section 16 as well by observing that "Sections 4 and 16 are thus best understood as providing complimentary remedies for a single set of injuries." Cargill, 479 U.S. at 113. The phrase "single set of injuries," in that context, must surely refer to two antitrust injuries, one already suffered and vindicated under Section 4 and one antitrust injury that is inchoate, threatened to be suffered in the future. The sentence following the one quoted confirms that reading: "[a]ccordingly, we conclude that in order to seek injunctive relief under § 16, a private plaintiff must allege a threatened loss or damage

30

'of the type the antitrust laws were designed to prevent and that flows from that which make the defendant's acts unlawful.'" Id. (quoting Brunswick, 429 U.S. at 489).

A critical reading of the foregoing supports the view that where the "man [did not] wait until he is ruined in his business before he [had] his remedy," but, claiming that his business was ruined by the defendant's alleged antitrust violation, took advantage of his remedy under Section 4 and failed to succeed, "[i]t would be anomalous, we think, to read the Clayton Act to authorize a private plaintiff to secure an injunction against a threatened injury for which he [was not] entitled to compensation if the injury actually occurred." Cargill, 479 U.S. at 112.

## CONCLUSION

For the reasons stated above, the defendants' pending motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(b) is GRANTED. The plaintiffs' motion pursuant to Rule 59(e) to amend the January 25 Order is also GRANTED.


SO ORDERED.

Dated:        December 20, 2007
              Brooklyn, New York

                              _____/s/_____
                              I. Leo Glasser
                              United States District Judge

## Counsel for the Plaintiffs

Mary McInnis Boies
Mary Boise & Associates
Empire Building
P.O. Box Drawer 67
Suite 5
Bedford, NY 10506

William Duker
Boies Schiller & Flexner LLP
570 Lexington Avenue
New York, NY 10022

Nicholas A. Gravante
Boies, Schiller & Flexner LLP
575 Lexington Avenue
7th Floor
New York, NY 10022

Steven I Froot
Boies Schiller& Flexner LLP
570 Lexington Avenue
16th Floor
New York, NY 10022

Kirk E. Chapman
Milberg Weiss Bershad & Shulman LLP
One Pennsylvania Plaza
New York, NY 10119

## Counsel for the Defendants

Wayne A. Cross
White & Case LLP
1155 Ave Of The Americas
New York, NY 10036

Michael J Gallagher
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036

Robert A. Milne
White & Case
1155 Avenue of the Americas
New York, NY 10036-2787

Victoria L. Oswald
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036

Robert M. Grass
Kaye, Scholer, Fierman, Hays & Handler
425 Park Avenue
New York, NY 10022

John Treece
Sidley, Austin, Brown & Wood
Bank One Plaza
10 S. Dearborn Street
Chicago, IL 60603

Saul Morgenstern
Kay Scholer LLP
425 Park Avenue
New York, NY 10022

David S. Copeland
Kaye, Scholer, Fierman, Hays & Handler
425 Park Avenue
New York, NY 10022

Mark S. Stewart
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103

Leslie Ellen John
Ballard Spahr Andrews & Ingersoll
1735 Market Street
51st floor
Philadelphia, PA 19103

Stephen Joel Kastenberg
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

James C. Egan
Clifford, Chance, Rogers & Wells LLP
2001 K Street, N.W.
Washington, DC 20006

Paul E. Slater
Sperling E. Slater, P.C
55 West Monroe Street
Suite 3200
Chicago, IL 60603

John C. Dodds
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921

Scott Alan Stempel
Morgan, Lewis & Bockius
1111 Pennsylvania Ave., N.W.
Washington, DC 20004

Victoria Lee Smith
Stinson, Morrison, Hecker, LLP
1201 Walnut
Suite 2900
Kansas City, MO 64106

William F. Cavanaugh
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036