**WHITE & CASE**

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

Tel  + 1 212 819 8200
Fax + 1 212 354 8113
www.whitecase.com

Direct Dial + 212-819-8797    wcross@whitecase.com

November 11, 2009

The Honorable Steven M. Gold
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Drug Mart Pharmacy Corp., et al. v. American Home Products Co., et al.*, No. 1:93-cv-5148 (E.D.N.Y.) (ILG) (SMG)

Dear Judge Gold:

I write on behalf of Defendants in advance of the status conference set for November 13, 2009. Defendants believe that there are two main issues to be addressed with the Court, and we are pleased to report that the parties have reached agreement on various open issues.

I.  Plaintiffs' Discovery Responses

As the Court is aware, the parties have been engaged in phased discovery that was undertaken to streamline the litigation, to limit the claims remaining in this case and ultimately to lead to a point when those Plaintiffs who are unable to come forward with *prima facie* evidence of a Robinson-Patman Act violation would be voluntarily dismissed from this case.[1] In the first step of this phased discovery, Plaintiffs were supposed to identify those independent retail pharmacies with lost customer information from their own records. To the extent that any Plaintiff is unable to identify at least one specific lost customer for a BNPD manufactured and

---

[1] *See* Transcript of Hearing at 24-26, 45, *Drug Mart Pharmacy Corp., et al. v. American Home Products Co., et al.*, No. 1:93-cv-5148 (E.D.N.Y. May 1, 2009) (ILG) (SMG) ("May 1 Transcript") (attached hereto as Exhibit A). *See also* Transcript of Hearing at 20-21, *Drug Mart Pharmacy Corp., et al. v. American Home Products Co., et al.*, No. 1:93-cv-5148 (E.D.N.Y. March 4, 2009) (ILG) (SMG) ("[T]his started out as a proposal by Mr. Morgenstern that we make a Twombly motion to dismiss. And as an alternative, that we take this -- this what they call unusual discovery in effect as a means of avoiding a dismissal with re-pleading. If there are 2700 cases out there, or 2,000 cases out there where the named plaintiff can't pick any patient, we ought to get those out of the way before we start down this road. THE COURT: I don't really think that there can be a quarrel with that, and I don't understand there to be one. In other words, if I understand the plaintiffs correctly, they're only going to bring cases where they can identify patients that they lost, specific individuals. Not market share theories. . . . So if they -- it follows logically that if there are plaintiffs who cannot produce any evidence about who their patients were, they do not have a claim.") ("March 4 Transcript") (attached hereto as Exhibit B).

ABU DHABI ALMATY ANKARA BEIJING BERLIN BRATISLAVA BRUSSELS BUCHAREST BUDAPEST DÜSSELDORF FRANKFURT HAMBURG
HELSINKI HONG KONG ISTANBUL JOHANNESBURG LONDON LOS ANGELES MEXICO CITY MIAMI MOSCOW MUNICH NEW YORK
PALO ALTO PARIS PRAGUE RIYADH SÃO PAULO SHANGHAI SINGAPORE STOCKHOLM TOKYO WARSAW WASHINGTON, DC

NEWYORK 7381108 (2K)

sold by a specific Defendant, that Plaintiff will not be permitted to pursue its damage claims against that Defendant.[2] Based on Plaintiffs' initial responses to Defendants' interrogatories, it is likely that many Plaintiffs will be unable to pursue damage claims against any Defendant.

To that end, and in accordance with this Court's Minute Order, dated May 4, 2009, Plaintiffs have provided Defendants on May 29, 2009 with a final list of BNPDs they contend are at issue in these cases and, for each BNPD, the time period for which they will pursue claims. As Your Honor has made clear, this list is final. Plaintiffs are not permitted to add any additional BNPDs or time periods.[3]

Furthermore, this initial stage of discovery also involved Plaintiffs' production of a final list of specific lost customers for each of the previously listed BNPDs during the identified time periods.[4] Plaintiffs agreed to provide lost customer information in two batches: the first on August 31, 2009 for the first 500 identified Plaintiffs and the second on November 30, 2009 for all remaining Plaintiffs.[5] To date, Plaintiffs have not provided any such lists of lost customer information, although Plaintiffs have represented that the lost customer lists for the first 500 retail pharmacies are complete. However, we understand that certain confidentiality issues, previously unknown to Plaintiffs, are preventing Plaintiffs from complying with the previously established deadlines. We are informed that these confidentiality issues will be a subject for discussion with the Court at the November 13 hearing. Once these confidentiality issues have been resolved, Plaintiffs have represented to Defendants that they will immediately produce the lists of lost customers for the first 500 Plaintiffs, and produce the final and complete lists of specific lost customers by March 1, 2010. Defendants do not oppose granting Plaintiffs this extension of time to comply with this stage of their production.

Regardless of the timing of production, Defendants understand that these lists of lost customers are intended to be the final supplements to Plaintiffs' previous responses to Defendants' interrogatories.[6] Accordingly, Defendants request that the Court confirm that these final lists will be signed under oath pursuant to the requirements of Fed. R. Civ. P. 33.

---

[2] *See* Exhibit A, May 1 Transcript, at 24-26, 45.

[3] *See* Exhibit A, May 1 Transcript, at 50 ("THE COURT: And once we have [the list], we're not going to come back and say, oh, I want to add some time frames and some drugs. MR. [DURRETTE]: We do understand that and I think we all understand that.")

[4] *See* Exhibit A, May 1 Transcript, at 26 ("each pharmacy was going to have to be able to identify specific people who were its customers and who were buying brand name prescription drugs from it and stopped, and that that was a threshold for any pharmacy plaintiff to seek to recover damages in this action. And any pharmacy that can't say, I had this customer buying this drug and he stopped, and I know of no reason why he would have stopped other than him going to a favored purchaser to get them more cheaply, I have no affirmative knowledge of any other reason, that only pharmacies able to say that should be seeking damages in this case."); *see also* March 4 Transcript at 14-17, 21, 29.

[5] *See* Letter from Nicholas A. Gravante, Jr. to the Honorable Steven M. Gold, dated May 15, 2009 (attached hereto as Exhibit C).

[6] *See* Exhibit B, March 4 Transcript, at 36.

II.  Scope of Favored Purchaser Contracts At Issue

In the series of hearings leading up to the current discovery schedule, the Court and the parties undertook significant efforts to narrow discovery in light of Judge Glasser's decisions holding that Designated Plaintiffs had failed to show the type of antitrust injury necessary to sustain monetary damages and injunctive relief under the Robinson-Patman Act. All parties demonstrated a clear understanding that the only favored purchasers at issue in this case are ones to whom Plaintiffs "have a reason to believe that at least some of those patients" were lost.[7] Defendants were to provide relevant contracts with these favored purchasers within 60 days after Plaintiffs provided their final listings of BPNDs/time periods.[8] Accordingly, Defendants have been actively engaged in the production of voluminous amounts of contracts that fit the aforementioned criteria.

After Defendants began production of the contracts for potential favored purchasers as outlined above, a dispute arose regarding the scope of the contracts at issue in these cases. The parties exchanged letters outlining their views. Subsequently, the parties met and conferred, and as a result, the parties have agreed to the following compromise regarding the scope of favored purchaser contract discovery:

- While Defendants do not concede their relevance to these cases, Defendants shall review their records and produce any contracts in their files for those entities generally categorized as "Specialty Pharmacies" and "Long-Term Care Pharmacies/Nursing Home Pharmacies" and specifically identified by Plaintiffs as relevant to these cases. Because these contracts are beyond the scope of production originally envisioned by Defendants, Defendants shall have an additional 60 days after Plaintiffs identify the specific Specialty Pharmacies and Long-Term Care Pharmacies/Nursing Home Pharmacies at issue in which to produce the remaining contracts in these categories.[9]

- In exchange, Plaintiffs shall relinquish their request for contracts related to entities generally categorized as "Retail Chain Pharmacies," "Hospital Pharmacies" and "HMO Pharmacies."

While Defendants believe that this compromise may still result in the production of irrelevant contracts, it will nonetheless expedite the discovery process and help achieve the goal of a more streamlined overall case going forward.

---

[7] *See* Exhibit B, March 4 Transcript, at 30-31.

[8] Pursuant to an agreement between the parties, Defendants time for complying with this requirement was extended to November 30, 2009.

[9] Defendants have agreed to provide those contracts currently in its files with Specialty Pharmacies and Long-Term Care Pharmacies/Nursing Home Pharmacies that Plaintiffs have identified in their October 5, 2009 letter to Defendants. To the extent that Plaintiffs later identify additional alleged favored purchasers in these two categories, Defendants would have 60 days from the date of subsequent identification to produce these additional contracts.

In sum, Your Honor established the current discovery procedures in order to determine – putting aside questions about Plaintiffs' ability to prove substantive liability — the number of individual Plaintiffs actually entitled to pursue damage claims. As the Court has anticipated, this culling process may ultimately impact the parties' settlement postures and/or streamline the remaining cases.[10] Defendants believe the current discovery plan, as outlined above, helps advance this goal.

We look forward to discussing these issues at the status conference on November 13.

Respectfully submitted,

*[signature]*

Wayne A. Cross

---

[10] *See* Exhibit B, March 4 Transcript, at 6 (noting this discovery should help demonstrate which Plaintiffs have claims because "if we're talking about a few hundred plaintiffs instead of a few thousand plaintiffs, we may have a different settlement posture and we may have a different case management ability.").

4

NEWYORK 7381108 (2K)